*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* K. D. SIMPSON, Minor.

FOR PUBLICATION
October 01, 2024
11:33 AM

No. 368248
Kent Circuit Court
Family Division
LC No. 22-052063-NA

Before: GADOLA, C.J., and K. F. KELLY and MARIANI, JJ.

PER CURIAM.

Respondent-father appeals by right the trial court's order terminating his parental rights to his minor child, KS. One of the significant barriers to reunification was what the trial court identified as respondent-father's drug use. Respondent-father denied abusing drugs despite his positive drug screens, and the trial court noted his refusal to acknowledge his substance-abuse problem in concluding he had not demonstrated adequate progress in overcoming his addiction. Respondent-father now challenges the trial court's findings concerning statutory grounds and best interests, particularly arguing that the trial court's requirement that he admit his drug use violated his Fifth Amendment right against self-incrimination. US Const, Am V. However, respondent-father was not compelled to provide an incriminating statement in violation of the Fifth Amendment, nor do his other claims of error have merit. Accordingly, we affirm.

## I. BASIC FACTS AND PROCEDURAL HISTORY

In September 2022, KS was born to respondent-mother,[1] and both respondent-mother and the child tested positive for cocaine. Respondent-mother admitted to petitioner, Department of Health and Human Services ("DHHS"), that she had a cocaine addiction and worked in prostitution. DHHS also spoke to respondent-father, who was from California, and he stated that he intended to return to his home state. At the time KS was born, respondents were living in a

---

[1] Respondent-mother was a respondent during the trial court proceedings, and her parental rights were also terminated. However, respondent-mother is not a party to this appeal.

one-bedroom apartment that was also occupied by two other men. The apartment was observed by DHHS with alcohol beverage containers and drug paraphernalia on the ground, and there were no provisions for the child except for diaper wipes. Respondents stated that they planned to leave the state with KS upon discharge. DHHS subsequently sought an ex parte order to take KS into protective custody, which the trial court granted.

In October 2022, respondent-father attended a scheduled parenting-time visit and was able to bond with KS. He tested positive for cocaine but denied any drug use. Shortly after, the trial court authorized the petition for placement of KS with respondent-mother's cousin, who was also fostering KS's three half siblings, and allowed respondents to continue with supervised parenting time. Over the next few months, respondent-father continued to test positive for cocaine, although he denied any drug use and blamed his positive test results on exposure to drugs in his home environment. Respondent-father also failed to obtain appropriate housing and remained in the same one-bedroom apartment throughout the proceedings. Because of his failure to engage in services for his substance abuse or to obtain appropriate housing, and respondent-mother's general absence throughout the proceedings, the trial court began termination proceedings in September 2023.

During trial, KS's caseworkers testified that respondent-father's substance abuse was not addressed by the services provided, and he continued to deny drug use despite testing positive for cocaine, alcohol, marijuana, and fentanyl. The caseworkers acknowledged that respondent-father had several negative tests throughout the proceedings, but the majority of the tests were positive. The caseworkers also testified that respondent-father had failed and refused to obtain appropriate housing despite being offered services to do so.

The trial court terminated respondents' parental rights under MCL 712A.19b(3)(c)(i) (conditions of adjudication continue to exist), (g) (failure to provide proper care and custody), and (j) (reasonable likelihood that child will be harmed if returned to parent). The trial court found that termination of parental rights to KS was appropriate under MCL 712A.19b(3)(c)(i) because more than 182 days had passed since case disposition and respondent-father continued to have issues with substance abuse and housing. Next, the trial court found that termination was appropriate under MCL 712A.19b(3)(c)(g) because the court did not "think there's a reasonable expectation that [father] will be able to provide proper care and custody within a reasonable time" considering the fact that "the child's getting to a point where [he is] developing some language skills, talking, and bonds to siblings . . . things like that will be important and the child can benefit from the permanency and stability of an adoptive home." Finally, the trial court found that termination was appropriate under MCL 712A.19b(3)(c)(j) because KS would be harmed by exposure to respondent-father's substance abuse. Concerning KS's best interests, the trial court recognized that respondent-father "has attended parenting time and established a bond with his child. Which is outstanding and totally needed, you know, for any prospect of parenting." However, the trial court concluded that it was "unconvinced" that if KS was returned to respondent-father, he would obtain appropriate housing and prioritize KS over everything else, including substance abuse, "and that's just, simply, the reason we don't restore children to parents who use substances, who are still using substances." The trial court stated that KS's current placement fulfilled his needs for permanency, stability, and finality; thus termination was in KS's best interests.

This appeal followed.

## II. STANDARDS OF REVIEW

We review for clear error both the trial court's decision that a statutory ground for termination has been established and the court's decision regarding the child's best interests. *In re Olive/Metts Minors*, 297 Mich App 35, 40; 823 NW2d 144 (2012). "In order to terminate parental rights, the trial court must find by clear and convincing evidence that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been met." *In re VanDalen*, 293 Mich App 120, 139; 809 NW2d 412 (2011). "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses." *In re BZ*, 264 Mich App 286, 296-297; 690 NW2d 505 (2004). "Best interests are determined on the basis of the preponderance of the evidence." *In re LaFrance*, 306 Mich App 713, 733; 858 NW2d 143 (2014).

## III. ANALYSIS

### A. STATUTORY GROUNDS

Respondent-father first contends that the trial court clearly erred when it terminated his parental rights. According to respondent-father, his parental rights should not have been terminated because of failed drug screens, which were falsely positive because of his housing situation. Respondent-father also asserts that the trial court clearly erred when it required him to admit to drug use in order to move toward reunification, which violated his constitutional right against self-incrimination. We disagree.

Under MCL 712A.19b(3)(c)(*i*), the trial court may terminate a parent's rights if at least 182 days have passed since entry of the initial dispositional order and "[t]he conditions that led to adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age." "This statutory ground exists when the conditions that brought the children into foster care continue to exist despite time to make changes and the opportunity to take advantage of a variety of services[.]" *In re White*, 303 Mich App 701, 710; 846 NW2d 61 (2014) (quotation marks and citation omitted).

More than 182 days passed between when the initial disposition order was issued in December 2022 and when termination occurred in September 2023. The trial court found that respondent-father's refusal to acknowledge his drug abuse hindered his substance-abuse treatment and that respondent-father was provided with the resources to find alternative housing but failed to do so. Testimony was presented throughout the proceedings that respondent-father repeatedly told agency representatives that he was looking for new housing but never obtained it. KS's caseworkers testified that respondent-father was provided with resources to find housing, but he "said he wanted to just find housing on his own" and refused to find a different residence. Respondent-father was still living in the one-bedroom apartment at the time of trial, and a caseworker testified that respondent-father was sleeping in his car at one point during the proceedings.

Another major obstacle for respondent-father was the fact that his drug screens continuously tested positive for cocaine and other substances, although he continued to deny drug

use.  See *In re Atchley*, 341 Mich App 332, 344; 990 NW2d 685 (2022) (stating that the respondent's failure to rectify his drug problem supported termination under MCL 712A.19b(3)(c)(*i*)).  Respondent-father argues that he should not have been required to admit to drug use in order to be granted reunification, citing this Court's holding in *In re Blakeman*, 326 Mich App 318, 321-325; 926 NW2d 326 (2018), in which the trial court rejected DHHS's recommendation for reunification of the respondent and child, expressing "disbelief that the therapist and DHHS were recommending reunification when respondent *had not even admitted* to his therapist that he assaulted the toddler."  On appeal, we held that by requiring the respondent "to confess to an act of criminal child abuse as a condition of reunification with his children, the trial court violated his Fifth Amendment right against compelled self-incrimination."  *Id*. at 331.  In other words, "[t]he privilege against self-incrimination permits a defendant to refuse to answer official questions in any other proceeding, no matter how formal or informal, if the answer may incriminate him or her in future criminal proceedings."  *Id*. at 333.

In the present case, respondent-father argues that, as in *In re Blakeman*, the trial court violated his rights by giving him the choice between admitting to drug use, therefore exposing himself to criminal liability, or denying drug use, which would result in termination of his parental rights.  The trial court explained to respondent that "the most troubling" aspect of the case was respondent's "recurrent substance use . . . and a failure to admit a substance abuse problem . . . ."  The court also stated that his caseworkers remarked that respondent needed to "get the substance abuse acknowledged first" before respondent could "engage in some sort of treatment for substance abuse."  Respondent-father contends that these remarks from the trial court violated his Fifth Amendment right against self-incrimination.  We disagree.

Regardless of whether a hypothetical admission by respondent-father that he used drugs would tend to incriminate him, respondent-father has not shown he was compelled to provide any such admission in a way that would violate the Fifth Amendment.  The present case is thus distinguishable from *In re Blakeman*, the case upon which respondent relies for relief.  In *In re Blakeman*, 326 Mich App at 335-336, the respondent was given the "extreme and detrimental" "Hobbesian choice" between admitting to a criminal act of child abuse or "continu[ing] to be separated from his children and eventually los[ing] his parental rights."  Respondent-father in this case was not comparably compelled to incriminate himself.  Rather, the issue in the present case was whether respondent-father was able to overcome his substance-abuse issues in order to be reunified with KS, and the trial court's overriding concern was not with respondent-father admitting to drug use but with him addressing the substance-abuse problem that the evidence overwhelmingly showed.  Respondent-father was not forced to simply choose between an incriminating admission and termination, and acknowledgment of his drug use was merely one factor that the trial court noted would assist respondent-father in getting treatment for his substance abuse.  In other words, the trial court's decision to terminate respondent-father's parental rights focused on the fact that he was unable to demonstrate improvement with overcoming addiction, a barrier to reunification.  This result is consistent with numerous unpublished cases from this Court declining to extend *In re Blakeman* beyond its facts.  See, e.g., *In re Hudson*, unpublished per curiam opinion of the Court of Appeals, issued February 22, 2024 (Docket Nos. 366099 & 366374), p 3 (concluding that the respondent was not compelled to self-incriminate herself because "[t]he trial court's concern was not whether respondent-mother admitted to witness tampering, but that she understood how statements she admitted to making affected her ability to safely parent her children and show empathy toward them"); *In re Brown*, unpublished per curiam opinion of

the Court of Appeals, issued August 24, 2023 (Docket No. 364598), p 4 (stating that the trial court did not clearly err when it terminated the respondent's parental rights because the respondent would not acknowledge the abuse committed by the minor's father and "it was practically impossible to fashion appropriate services without knowing what needed to be remedied"); *In re Conde*, unpublished per curiam opinion of the Court of Appeals, issued August 13, 2019 (Docket No. 347105), p 4 (rejecting the respondent's argument that he was "punished" for exercising his right against self-incrimination because "[t]he court was not looking for an admission from respondent, but rather some enlightenment as to how what the children experienced had traumatized them and was detrimental to their physical, mental, and emotional well-being").

In sum, considering respondent-father's failure to rectify his substance-use issue and his housing situation throughout the duration of the proceedings, the trial court did not clearly err by finding that there was no reasonable likelihood that respondent-father would rectify these barriers within a reasonable time. See MCL 712A.19b(3)(c)(*i*).[2]

## B. BEST INTERESTS

Respondent-father also argues the trial court clearly erred when it found that termination was in KS's best interests because the court failed to consider guardianship for KS, which could have allowed him time to overcome his substance-abuse problem and housing situation while still providing KS with permanency and stability. We disagree.

"Once a statutory ground for termination has been proven, the trial court must find that termination is in the child's best interests before it can terminate parental rights." *In re Olive/Metts*, 297 Mich App at 40. Thus, "[i]f the court finds that there are grounds for termination of parental rights and that termination of parental rights is in the child's best interests, the court shall order termination of parental rights and order that additional efforts for reunification of the child with the parent not be made." MCL 712A.19b(5). When considering best interests, the focus is on the child's interests rather than the parent's interests. *In re Moss*, 301 Mich App 76, 87; 836 NW2d 182 (2013). When deciding whether termination is in the child's best interests, the trial court "may consider the child's bond to the parent[;] the parent's parenting ability[;] the child's need for permanency, stability, and finality[;] and the advantages of a foster home over the parent's home." *In re Olive/Metts*, 297 Mich App at 41-42 (citations omitted). The trial court can also consider the likelihood that "the child could be returned to [the] parent's home within the foreseeable future, if at all." *In re Frey*, 297 Mich App 242, 248-249; 824 NW2d 569 (2012). "The trial court should weigh all the evidence available to determine the child's best interests." *In re White*, 303 Mich App at 713.

Concerning best interests, the trial court found that, although respondent-father successfully bonded with the child,

---

[2] Because termination was proper under MCL 712A.19b(3)(c)(*i*), we need not consider the additional grounds upon which the trial court based its decision. *In re HRC*, 286 Mich App 444, 461; 781 NW2d 105 (2009).

attendance at parenting time a couple times a week, versus the total commitment to parent 24/7, day to day, is a whole different thing. . . . Requires an appropriate place, some resources anyways, and also, obviously, a parent who prioritized the child over everything else in life. And I am unconvinced that if the child was restored to [respondent-father], that that would happen, and that [respondent-father] would continue using substances, and those substances at times, because of their addictive nature, would take priority over [the child], and that's just, simply, the reason we don't restore children to parents who use substances, who are still using substances.

The trial court stated that "there just does not seem to be any forward progress by [respondent-father] in changing his living situation to something that would be okay for a child." The trial court further noted:

> I have considered the option of a relative guardianship here, but the legal mandate, for the Court anyways, is to move towards a permanent situation and permanency is not necessarily served by a guardianship because guardianship is subject to challenge . . . and gives less control to his prospective adoptive parent. And particularly, given the unstable, and substance use, involved lifestyles of both [respondent-father], and [respondent-mother], I can see why the prospective adoptive parents would want to have control over what happens with the child, and would not want to have a guardianship situation that might be challenged down the road.

Under MCL 712A.19a(9)(c), if "initiating termination of parental rights to the child is clearly not in the child's best interests," then the trial court may "appoint a guardian for the child" if "the court determines that it is in the child's best interests." In *In re Rippy*, 330 Mich App 350, 359; 948 NW2d 131 (2019), we stated that the "respondent's argument that a guardianship should have been established" was not persuasive because "no one petitioned the trial court for a guardianship and there is no suggestion in the record that the [caregiver] with whom [the minor child] was placed would have agreed to that arrangement." We held that a trial court "can order a guardianship only if it determines that [doing so] is in the child's best interests[.]" *Id.* at 360 (quotation marks and citation omitted; alterations in original).

In the present case, the trial court stated that it found by a preponderance of the evidence that adoption, not guardianship, was in KS's best interests, because it would allow the adoptive parent to "have control over what happens with the child" and avoid having the guardianship challenged in the future, which may affect the child's permanency, stability, and finality. See *In re LaFrance*, 306 Mich App at 733. Throughout the proceedings, respondent-father did not petition the court for a guardianship, and there was no indication that KS's caregiver would have agreed to a guardianship placement. See *In re Rippy*, 330 Mich App at 359. In fact, the caseworker testified that KS's relative caregiver wanted to pursue adoption and that the child was getting the permanency, stability, and finality that he needed from his foster home.

"Unlike termination of parental rights, the appointment of a guardian for a juvenile is not necessarily permanent. The court is required to review the guardianship annually and may conduct

-6-

additional reviews, if necessary." *In re TK*, 306 Mich App 698, 705; 859 NW2d 208 (2014). Additionally,

> a guardian may petition the court for permission to terminate the guardianship. Even the parent has the ability to seek termination of the guardianship. . . . [W]hile the guardian assumes the legal duties of a parent . . . , the parent is still under many circumstances permitted to maintain a relationship with the child. [*Id*.]

As the trial court noted, considering respondent-father's ongoing substance abuse and issues obtaining appropriate housing, if the trial court placed the child in a guardianship, there was the possibility that the child would be involved in an ongoing exchange between two homes, only one of which had been shown to be safe for the child, thereby affecting the child's permanency, stability, and finality. See *In re Olive/Metts*, 297 Mich App at 41-42.[3] The trial court focused on the child's best interests, rather than respondent-father's interest in possibility reuniting with the child in the future, and it considered the advantages of the child's foster home over his home. See *id*. Therefore, considering the fact that there was no guardianship petition and the child's caregiver was considering adoption, not guardianship, and the fact that respondent-father continued to abuse drugs and maintain inappropriate housing throughout the proceedings, the trial court did not clearly err when it found by a preponderance of the evidence that placement with respondent-father was not in the child's best interests.

In addition to the issue of guardianship, the trial court did not otherwise clearly err when it concluded that termination was in KS's best interests. KS's need for permanency, stability, and finality was paramount. The trial court recognized that respondent-father, because of his lifestyle and living situation, would not provide those goals to the child. Respondent-father demonstrated an inability to obtain safe, stable, and suitable housing during the proceedings in Michigan and was unable to demonstrate that he would be able to provide such housing to KS if they were to return to California. The trial court heard testimony from DHHS caseworkers that while respondent-father was able to bond with KS, respondent-father's inability to make real progress toward finding suitable housing and addressing his drug addiction created serious barriers toward providing KS with the permanency, stability, and finality that he needed.

Respondent-father asserts that more parenting time was in KS's bests interests, and he was denied increased parenting time because of DHHS's "arbitrary" policies. But this argument confuses the focus during the best-interests stage, in which the focus is on the needs of the child, not the parent. See *In re Payne/Pumphrey/Fortson*, 311 Mich App 49, 63; 874 NW2d 205 (2015) ("[T]he focus at the best-interest stage has always been on the child, not the parent.") (quotation

---

[3] Relatedly, while the trial court's comment that "we don't restore children to parents who use substances" could be taken, in isolation, to suggest it terminated respondent-father's parental rights based on his "drug use alone," the trial court's full explanation makes clear that its termination decision was based not just on drug use but on the demonstrated "connection" between that use and respondent-father's failure and inability to provide a safe home environment for the child. *LaFrance*, 306 Mich App at 731; see also *In re Richardson*, 329 Mich App 232, 253; 961 NW2d 499 (2019) (explaining that, for a parent's drug use to "justif[y] the state in terminating parental rights[,] there must be some showing or harm or actual risk of harm that results from" it).

marks and citation omitted; alteration in original). Moreover, respondent-father's argument misconstrues the trial court's best-interests findings. The trial court did not conclude that it was in KS's bests interests to terminate respondent-father's parental rights because he failed to bond with KS. Rather, the trial court found that despite the bond that KS had with respondent-father, KS would not be provided with a safe, stable, and permanent home if returned to respondent-father's care. For all of the reasons previously stated, this finding was not clearly erroneous. See *In re AH*, 245 Mich App 77, 89; 627 NW2d 33 (2001) (a parent's history of substance abuse is relevant to whether termination is in the child's best interests); *In re Frey*, 297 Mich App at 248-249 (concluding that the respondents' failure to obtain "a permanent, safe, and stable home" supported the trial court's best interests finding).

Affirmed.

/s/ Michael F. Gadola
/s/ Kirsten Frank Kelly
/s/ Philip P. Mariani